[Cite as *State v. Thompson*, 2019-Ohio-4835.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-T-0081** |
| LUCIE M. THOMPSON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court, Central District, Case No. 2017 CRB 00362 E.

Judgment: Affirmed.


*Dennis Watkins,* Trumbull County Prosecutor, and *Deena L. DeVico,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michela J. Huth*, P.O. Box 17, Bolivar, OH 44612 (For Defendant-Appellant).


MATT LYNCH, J.

{¶1}    Defendant-appellant, Lucie M. Thompson, appeals from her conviction and sentence for Cruelty to Animals in the Trumbull County Court, Central District. The issues to be determined by this court are whether a judge within one district of a county court may transfer a case to a judge in the other district if there is a conflict, whether a companion animal's seizure without a probable cause hearing constitutes reversible error, whether non-companion animals may be seized from an owner's property under a

search warrant, whether a conviction for cruelty to animals pursuant to R.C. 959.13 may relate to a companion animal, whether failure to provide an inventory of property to a defendant is reversible error, whether counsel is ineffective for failure to raise the foregoing issues, and whether a trial court errs by failing to issue a final order upon remand by a court of appeals. For the following reasons, we affirm the decision of the lower court.

{¶2}   On November 15, 2017, a search warrant was issued, signed by Judge Thomas Campbell of the Trumbull County Court, Central District, for a property located at 7119 Warren-Sharon Road in Brookfield, rented by Lucie Thompson. Trumbull County Animal Welfare League Humane Agent Harold Firster had filed an affidavit seeking the warrant, based on receiving "a multitude of complaints" regarding equine care and housing, and personally viewing the horses in an inadequate shelter. The warrant permitted a search of the premises to establish whether animals were being abused.

{¶3}   A second affidavit warrant was signed by Firster on November 17, 2017, in which he alleged that upon inspecting the animals pursuant to the prior warrant, the safety and well-being of the horses "were in dangerous physical jeopardy." A second search warrant was signed by Judge Campbell on that date, in which he found probable cause to search the premises for "2 adult horses, 1 pig, 1 dog, and various chickens and ducks" and that these animals "are to be removed and placed in a suitable, safe location and environment."

{¶4}   On December 8, 2017, a Complaint was filed in the Trumbull County Court, Eastern District, charging Thompson with one count of Cruelty to Animals in

2

violation of R.C. 959.13, a misdemeanor of the second degree.

{¶5} The trial court ordered that the matter be transferred to the Central District due to a conflict of interest on December 14, 2017.

{¶6} A trial was held on May 23, 2018. The following pertinent testimony and evidence were presented:

{¶7} Firster testified that following the receipt of complaints regarding Thompson's animals, he investigated and observed animals living "in an unsuitable environment" without food or water. A warning was given to Thompson on November 10, 2017. After obtaining a search warrant, Firster found the horses were housed inadequately, they had poor footing in their small stall (described as either 10' x 10' or 12' x 12'), and their feet were not properly cared for. After an initial contact, Thompson covered the top of the horse stall with a tarp, a condition which witness Dr. Suzanne Wilcox later expressed concern might cause the horses harm. He did not see any fresh water for the animals, the horses appeared thin, and he did not see activity outside of the stall demonstrating the horses were being exercised. The chickens and ducks, of which there were approximately 35 to 37, did not look clean and were housed in a similar-sized stall.

{¶8} Several employees of Happy Trails Farm Animal Sanctuary, which assisted with the removal of the animals, made similar observations. Laurie Jackson, Kaleigh Miller, and Rebecca Scalise observed the animals in small enclosures and did not view food or water. According to Jackson, the horses had matted manure on their bodies and looked thin, with one having thrush from standing in dirty and wet conditions. She testified that some of the fowl had inflamed skin and scales on their feet, indicating

3

the presence of mites. The ducks had reoccurring infections due to lack of water to clean themselves.

{¶9} Pursuant to the testimony of the foregoing witnesses, the horses were removed on November 17, 2017, and one pig, two ducks, 24 roosters, and one dog were removed on November 20, 2017. The dog was taken to the Trumbull County Animal Welfare League while the remaining animals were taken to Happy Trails in Ravenna.

{¶10} For the defense, Thompson testified that she had the horses in a temporary structure because they had been dropped off at her home unexpectedly by the stable that had been housing them. She testified that she planned to build larger shelters/enclosures for the animals and that they were well fed, had access to water, and she walked the horses around the yard. Several witnesses, including two neighbors and her son Roger Galford testified that they knew Thompson and either saw no mistreatment of her animals or saw her taking good care of them, feeding them and walking the horses.

{¶11} On May 23, 2018, the trial court judge found Thompson guilty of the sole offense.

{¶12} Defense counsel filed a Motion to be Removed as Counsel for Defendant on June 6, 2018, attached to which was a letter from Thompson requesting that he no longer represent her. The motion was granted and a public defender was appointed.

{¶13} On August 6, 2018, Thompson's counsel filed a sentencing memorandum, in which it was argued that payment of restitution for the care of the animals would be unwarranted. A sentencing hearing was held on that date, a transcript of which is not

4

part of the record on appeal. The court sentenced Thompson to serve 30 days in jail and pay a fine of $500, both of which were suspended. The court ordered that she complete a term of one year of probation and that the "animals seized" be forfeited to the Happy Trails Farm Animal Sanctuary and the dog forfeited to the Trumbull Animal Welfare League. The matter of restitution was "reserved" until briefed by the state.

{¶14} Thompson filed a notice of appeal on August 28, 2018. This court remanded the matter due to a lack of a final appealable order, requiring the lower court to hold a restitution hearing and issue a final formal judgment. The court held a hearing and issued a judgment on October 3, 2018, finding that "defendant does not object to and court awards * * * restitution in amount of $1,812.76 to Trumbull County Animal Welfare" for veterinary bills relating to the pig. This court remanded the matter again for the issuance of a single formal judgment entry that stated the fact of conviction and sentence. On April 5, 2019, the lower court issued a final Judgment Entry which stated the conviction, sentence, and restitution as described above.

{¶15} On appeal, Thompson raises the following assignments of error:

{¶16} "[1.] The Trial Court erred and abused its discretion because the Trumbull County Central District and Judge Thomas A. Campbell patently and unambiguously lacked jurisdiction over the criminal case.

{¶17} "[2.] The Trial Court erred and abused its discretion because the searches and seizures, based upon invalid search warrants, violated Lucie Thompson's Fourth Amendment Right to be free from Unreasonable Seizures.

{¶18} "[3.] The Trial Court erred and abused its discretion because Lucie Thompson was not given notice and an opportunity to be heard on the State deprivation

5

of her companion animal, and therefore her due process rights were violated, and the State unreasonably seized her property.

{¶19} "[4.] The Trial Court erred and abused its discretion when it violated Lucie Thompson's Fourteenth and Fourth Amendment rights by authorizing the seizure of animals pursuant to R.C. 959.13, when no authority exists to do so.

{¶20} "[5.] The Trial Court erred and abused its discretion because the R.C. 959.13 Criminal Conviction is invalid as to the Dog Seized.

{¶21} "[6.] The Trial Court erred and abused its discretion because the State failed to provide Lucie Thompson with the R.C. 2933.241 Inventory of Property.

{¶22} "[7.] The Trial Court erred and abused its discretion because Lucie Thompson's Attorney was Ineffective and this Violated her Sixth Amendment Right to Counsel.

{¶23} "[8.] [The] Trial Court erred and abused its discretion because it failed to follow this Appellate Court's remand Order."

{¶24} In her first assignment of error, Thompson argues that the Trumbull County Court, Central District lacked jurisdiction over the case because Brookfield Township is located within the Eastern District.

{¶25} The State contends that jurisdiction in either district was proper and emphasizes that the division of the two districts is solely for administrative purposes.

{¶26} "With respect to criminal matters, [R.C. 1901.20(A)(1)] provides that a municipal court has subject matter jurisdiction over misdemeanors committed within its territorial jurisdiction." *State v. Jones*, 11th Dist. Portage Nos. 2010-P-0051 and 2010-P-0055, 2011-Ohio-5109, ¶ 24. "[A]ll territory within [a] county not subject to the

6

territorial jurisdiction of any municipal court" is subject to the jurisdiction of the county court, which has jurisdiction of "all misdemeanor cases" falling within that territory. R.C. 1907.01; R.C. 1907.02(A)(1). Issues relating to subject matter jurisdiction are reviewed by this court de novo and can be raised at any time. *Jones* at ¶ 12.

{¶27} Here, the charge against Thompson was filed in the Trumbull County Court, Eastern District. On December 14, 2017, Judge Platt, of the Eastern District, transferred the matter to the Central District due to a conflict of interest. The matter proceeded to its conclusion in the Central District. As made clear in R.C. 1907.01 and .02, a county court has jurisdiction over *all territory* not subject to the authority of a municipal court. Since the offense occurred in Brookfield, which is located in Trumbull County and has no municipal court, it is subject to the jurisdiction of the Trumbull County Court.

{¶28} Regarding the division of the Trumbull County Court into two districts, pursuant to R.C. 1907.15(A)(1), "[i]n counties having more than one county court judge, subject to division (A)(2) of this section, the presiding judge of the county court may divide the county court district into areas of separate jurisdiction and may designate the location at which each judge shall hold court." The Trumbull County Court has two judges, pursuant to R.C. 1907.11, and has been divided into two districts. R.C. 1907.15(B) further provides: "The jurisdiction of each county court judge shall be coextensive with the boundaries of the county court district."

{¶29} Thompson argues the division of the court into "separate jurisdictions" deprives the Central Court of jurisdiction over matters arising in Brookfield. This court has addressed a similar issue. In *Thomas v. Corrigan*, 135 Ohio App.3d 340, 733

7

N.E.2d 1213 (11th Dist.1999), a question was raised as to jurisdiction when a complaint was filed in the Ashtabula County Court, Eastern Division but a claim was made that the subject property in dispute was located in a city under the jurisdiction of the Western Division. In Ashtabula, there is also one judge that "holds court" in each of the two divisions. This court held that "[a]lthough R.C. 1907.15(A)(1) refers to each judge's area as an area of separate jurisdiction, the language of R.C. 1907.15(B) clearly grants each judge jurisdiction to hear cases with territorial jurisdiction throughout the county court district." *Id.* at 345. Thus, it concluded that "the Eastern Division's jurisdiction is coextensive with the Western Division's jurisdiction, and the judge in either area has the jurisdiction to hear cases arising in the other's area." *Id.*

{¶30} Thompson's arguments that she was fingerprinted separately by the districts and informed that she had to get records from the Eastern District rather than the Central District, have no impact on whether, as a matter of law, the Central District had jurisdiction.

{¶31} Thompson also argues that when a county judge recuses himself, only the Supreme Court has authority to appoint another judge, pursuant to R.C. 1907.141.

{¶32} R.C. 1907.141(A)(1) provides that when "a vacancy occurs in the office of a judge of a county court that consists of only *one judge* or if the judge of a county court of that nature is * * * unavailable due to * * * recusal, the chief justice of the supreme court may assign a sitting judge of another court of record * * * to temporarily serve on the court." (Emphasis added.) In this case, the county court consists of two judges, pursuant to R.C. 1907.11, so R.C. 1907.141(A) is inapplicable. In the case of a county court with two judges, the presiding judge may either request appointment from the

8

supreme court or "appoint a substitute who is the resident of the territory of the court" and "a judge of a court of record." R.C. 1907.141(B)(1). When there is more than one judge in a county court the concern of not having another available judge to hear a case is not present as within a single judge court.

{¶33} Thompson's argument that Judge Campbell could not hear the case because he does not live within the jurisdiction of the Eastern District lacks merit. As this court has held, "a judge must be a resident of the county court district" as a whole, but need not be a resident of the area where he is assigned, or, it follows, of the area where the assigned case originated. *Thomas*, 135 Ohio App.3d at 345, 733 N.E.2d 1213.

{¶34} *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, cited by Thompson, is distinguishable. There, the common pleas judge transferred a case from one municipal court to another due to a purported conflict with all of the judges of a court, which is not the same circumstance present here, where the matter was merely assigned to a different judge of the same court.

{¶35} The first assignment of error is without merit.

{¶36} In her second assignment of error, Thompson argues that since the Central District lacks jurisdiction, Judge Campbell also lacked authority to issue a search warrant.

{¶37} Pursuant to R.C. 2933.21, "[a] judge of a court of record may, within his jurisdiction, issue warrants to search a house or place * * *." For the reasons outlined above, we find that Brookfield Township falls under the jurisdiction of the entirety of the Trumbull County Court and both of its judges. Since Thompson's argument that Judge

9

Campbell lacked authority to issue a warrant related solely to jurisdiction, we find no error in his issuance of the warrant. This is not the case, such as in *State v. Dulaney*, 2013-Ohio-3985, 997 N.E.2d 560 (3d Dist.), cited by Thompson, where a judge issued a warrant for property located "in a foreign county, outside of [his] jurisdiction." *Id.* at ¶ 19.

{¶38} The second assignment of error is without merit.

{¶39} In her third assignment of error, Thompson argues that the court abused its discretion by allowing her dog to remain seized without conducting a probable cause hearing and, thus, her due process rights were violated.

{¶40} "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." *State v. Hochhausler*, 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996).

{¶41} Pursuant to R.C. 959.132(B), "[a]n officer may seize and cause to be impounded at an impounding agency a companion animal that the officer has probable cause to believe is the subject of an offense." In such an instance, the officer shall provide written notice of the seizure and impoundment to the owner, providing notice of a probable cause hearing. R.C. 959.132(C). "Not later than ten days after notice is provided or at the next available court date, the court shall hold a hearing to determine whether the officer impounding a companion animal had probable cause to seize the companion animal." R.C. 959.132(E)(1).

{¶42} An "offense" is defined as a violation of R.C. 959.131, which prohibits an owner from cruelty to companion animals. R.C. 959.132(A)(3). Pursuant to R.C.

10

959.132(A)(1) and R.C. 959.131(A)(1), a companion animal is "any animal that is kept inside a residential dwelling and any dog or cat regardless of where it is kept" and does not include livestock.

{¶43} The terms of the statute require a probable cause hearing when the companion animal is the subject of an offense under R.C 959.131, which was not the case here. However, Thompson argues this should apply to a companion animal seized relating to any cruelty charge, since the same concerns arise and the State should not be permitted to avoid the requirement for a hearing by seizing a dog and charging for cruelty under a different statute, R.C. 959.13.

{¶44} Even if Thompson were correct in arguing that she was entitled to a probable cause hearing on the seizure of her dog under these circumstances, which the record does not indicate was held, we fail to find grounds for the relief she requests, i.e., return of the dog and reversal of her conviction.

{¶45} Issues relating to due process in criminal matters can be found to constitute harmless error where the alleged due process violation does not "affect the outcome of the case." *State v. Mitchell*, 11th Dist. Portage No. 2018-P-0047, 2019-Ohio-844, ¶ 19; *State v. Dunning*, 2d Dist. Greene No. 08CA07, 2009-Ohio-691, ¶ 13. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

{¶46} Here, we find no ground for reversal of Thompson's conviction based on a failure to hold a probable cause hearing to determine whether the dog should be returned to her prior to the trial. Whether the dog was returned to her had no impact on the evidence presented at trial or her commission of an offense of Cruelty to Animals.

11

There was no particular testimony offered about the dog or its condition and the conviction for the sole charge related to testimony about the horses and chickens, as will be discussed below.

{¶47} Further, regarding the continued seizure of her dog, Thompson was ultimately able to refute any abuse through the trial and argue that the dog should be returned during sentencing. The trial court found Thompson guilty of Cruelty to Animals and then, as part of its sentence, placed her on one year of probation and ordered that all of the animals seized be forfeited. This court has held that a trial court "has the authority to order the confiscation of *any* animal following a conviction for cruelty to animals." *State v. Bartlett*, 11th Dist. Trumbull No. 96-T-5459, 1997 WL 269188, *3 (May 2, 1997). Several other districts have also found that "it is a proper condition of probation to order a person convicted of cruelty to animals to forfeit other animals and not just the animals that were the subjects of the charges." *State v. Kidd*, 7th Dist. Belmont No. 11-BE-33, 2012-Ohio-6094, ¶ 13; *State v. Brooks*, 9th Dist. Medina No. 07 CA 0111-M, 2008-Ohio-3723, ¶ 59-60 (a trial court did not err when ordering forfeiture of the defendant's dog when she was convicted of cruelty to her horse). Although Thompson did not have an initial hearing regarding the seizure of her dog, the court ultimately removed it from her custody and was entitled to do so under the law.

{¶48} The third assignment of error is without merit.

{¶49} In her fourth assignment of error, Thompson argues that there are no provisions under Ohio law allowing for the seizure of non-companion animals.

{¶50} While R.C. 959.13 does not specifically provide for removal of non-companion animals, it also does not prohibit their removal. Thompson would have us

12

hold that animals who are allegedly abused must remain with the alleged abuser after charges are filed, which we find untenable. Here, the State sought a search warrant, supported by probable cause, which permitted it to seize the animals in question.

{¶51} Further, while Thompson argues that she suffered an "erroneous deprivation" and a lack of due process, as is made clear in the third assignment of error, she was permitted to refute the abuse of the animals at trial. Moreover, following trial the court deemed it necessary for her to forfeit her animals. In the case of a conviction for Cruelty to Animals under R.C. 959.13(A) "the court may order the offender to forfeit the animal or livestock." R.C. 959.99(D). Thus, it was ultimately proper that she be prohibited from owning these animals and she was given a chance to demonstrate otherwise. Again, even if the animals had been impermissibly seized, this would constitute harmless error.

{¶52} As to Thompson's contention that there was a violation of her Fourth Amendment right against an unlawful seizure, we again find no grounds for reversal. The animals were seized pursuant to a search warrant. Even if this warrant had been improperly issued, the good faith exception to the exclusionary rule allows evidence seized to be admissible provided the police acted in reasonable reliance on the search warrant issued by a detached and neutral magistrate. *State v. Bangera*, 2016-Ohio-4596, 70 N.E.3d 75, ¶ 65 (11th Dist.). Moreover, as explained above, there was a multitude of evidence supporting the conviction that arose even prior to the seizure of the animals and their examination by the veterinarian.

{¶53} The fourth assignment of error is without merit.

13

{¶54} In her fifth assignment of error, Thompson argues that she could not be convicted for abuse or neglect of her dog under R.C. 959.13 since that statute does not apply to companion animals.

{¶55} To the extent that the assignment of error relates to the application of a statute, we review such matters de novo. *State v. Bozek*, 11th Dist. Portage No. 2017-P-0028, 2018-Ohio-4945, ¶ 72.

{¶56} Thompson was charged with and convicted of Cruelty to Animals, a violation of R.C. 959.13. Pursuant to that statute, a person shall not confine an animal without supplying it "with a sufficient quantity of good wholesome food and water" or confine an animal without "access to shelter from wind, rain, snow, or excessive direct sunlight if it can reasonably be expected that the animal would otherwise become sick or in some other way suffer." R.C. 959.13(A)(1) and (2).

{¶57} Thompson notes that the dog must have been part of the basis for the conviction since the complaint included the following language:

> no person who confines or who is the custodian or caretaker of a *companion animal* shall negligently do any of the following: CONFINE AN ANIMAL WITHOUT SUPPLYING IT DURING SUCH CONFINEMENT WITH A SUFFICIENT QUANTITY OF GOOD WHOLESOME FOOD AND WATER AND IMPOUND OR CONFINE AN ANIMAL WITHOUT AFFORDING IT, DURING SUCH CONFINEMENT, ACCESS TO SHELTER FROM WIND, RAIN, SNOW OR EXCESSIVE DIRECT SUNLIGHT IF IT CAN REASONABLY BE EXPECTED THAT THE ANIMALS WOULD OTHERWISE BECOME SICK OR IN SOME OTHER WAY SUFFER AND KEEP ANIMALS OTHER THAN CATTLE, POULTRY OR FOWL, SWINE, SHEEP, OR GOATS IN AN ENCLOSURE WITHOUT WHOLE SOME EXERCISE WHICH IS IN VIOLATION OF SECTION 959.13 OF THE OHIO REVISED CODE, Cruelty to animals, A **M2.**

(Emphasis added.)

{¶58} Thompson does not argue that the complaint was defective but that her dog "was one of the animals which she was charged and convicted of abusing or neglecting" and that charges relating to companion animals must be brought under R.C. 959.131. R.C. 959.13 does not specify whether "animal" means only non-companion animals. Regardless, it is evident from a review of the trial transcript that the conviction was based on Thompson's conduct in relation to many animals, as the testimony primarily established abuse relating to the fowl, horses, and pig. Specifically, evidence was presented relating to their lack of food, water, and shelter from the elements. This evidence was sufficient to establish the offense of Cruelty to Animals. As such, we find no error in her conviction for a violation of R.C. 959.13.

{¶59} The fifth assignment of error is without merit.

{¶60} In her sixth assignment of error, Thompson argues the lower court abused its discretion because an inventory of her property was not made in her presence nor was she provided with a copy of the inventory.

{¶61} To the extent that it can be argued evidence was illegally obtained due to the failure to complete or provide an inventory, this would be properly raised in a motion to suppress, and the issue is waived due to failure to file such a motion. *State v. Campbell*, 69 Ohio St.3d 38, 44, 630 N.E.2d 339 (1994). Thompson argues an abuse of discretion by the lower court for failure to enforce the requirements of R.C. 2933.241, however, at most, the applicable standard would be plain error since Thompson did not object to the alleged failure to supply her with a copy of the inventory. "Plain error exists when it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Issa*, 93 Ohio St.3d 49, 56, 752 N.E.2d 904 (2001).

15

{¶62} Pursuant to R.C. 2933.241:

> The officer taking property under a warrant for search shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken * * *. The return shall be made promptly and shall be accompanied by a written inventory of any property taken. The inventory shall be made in the presence of the applicant for the warrant and the person from whose possession or premises the property was taken, if they are present * * * and shall be verified by the officer. The judge or magistrate shall upon request deliver a copy of the inventory to the person from whom or from whose premises the property was taken and to the applicant for the warrant.

{¶63} The State contends that Thompson does not demonstrate she did not receive an inventory of the property and a return of the search warrant demonstrates an inventory was completed. A document titled "Return of Search Warrant" appears in the record, but contains no time stamp. It states that a copy of the search warrant was provided to Thompson but a copy of the inventory was not presented to her "as no items were seized." It would appear, then, that this may relate to the execution and service of the first search warrant, during which no animals were seized. Thompson claims that she did not receive an inventory following the seizure of her animals.

{¶64} Even presuming no inventory was completed or provided to Thompson, however, this did not result in prejudice or provide any grounds for relief. It has been held that "the preparation and return of an inventory is ministerial" and "does not violate any fundamental rights" of a defendant. *State v. Farley*, 4th Dist. Lawrence No. 00CA25, 2001 WL 888366, *4 (July 27, 2001); *State v. Moretti*, 10th Dist. Franklin Nos. 73AP-440, et al., 1974 WL 183864, *4 (Apr. 9, 1974). "[I]t is generally recognized that the failure of officers to make a prompt inventory and return does not affect the validity of the search, where it is otherwise reasonable." *State v. Watson*, 3d Dist. Logan No. 8-

16

89-6, 1990 WL 131948, *3 (Aug. 27, 1990). Thompson concedes that, generally, "the failure to comply with R.C. 2933.241 does not warrant exclusion of the evidence seized." As several courts have held, "[t]here is no prejudice to the defendant that is inherent in the failure of the officer to file an inventory." *Moretti* at *4; *Farley* at *4 ("even if the officers did err in preparing and returning Farley's inventory, the error would not have prejudiced Farley").

{¶65} Thompson argues that the items seized were the basis of the charge against her and she could not refute whether the animals in question "were in fact her animals." We find no reason why Thompson, who was present when the animals were seized, could not refute the charge against her without an inventory. At trial, Thompson contested the allegations of abuse rather than whether she was the owner of the animals. While she contends that the State claimed an incorrect number of chickens seized, this has little relevance to her conviction for a single charge of cruelty to animals. Further, since it was determined that she should retain none of the animals, an inventory would be unnecessary for the purpose of returning any property.

{¶66} The sixth assignment of error is without merit.

{¶67} In her seventh assignment of error, Thompson argues that trial counsel was ineffective because he failed to raise various issues and examine all of the evidence.

{¶68} To demonstrate ineffective assistance of counsel, a defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 87

17

Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶69} Thompson argues that the failure to raise the issues addressed above constituted ineffective assistance of counsel. As already discussed in detail, these arguments either lack merit or resulted in no harm to Thompson. As such, the elements of an ineffectiveness claim are not met.

{¶70} Thompson also requests we reference the fact section of her brief regarding other instances of ineffectiveness, without presenting any argument as to these issues. Appellate courts do not "make arguments on appellant['s] behalf." (Citation omitted.) *N. Kingsville v. Beals*, 11th Dist. Ashtabula No. 2017-A-0087, 2018-Ohio-3012, ¶ 8. Briefly, however, we note that Thompson states counsel can be "seen nodding off" in the video of the trial, that he failed to request higher quality pictures from the State, that he did not review a video of the seizure recorded by her son, and that he should have pointed to discord between Thompson and a State's witness (which assertion is not supported by anything in the record). However, she fails to establish any argument regarding how these issues prejudiced her and resulted in a fundamentally unfair outcome of the proceedings, especially given the multitude of evidence establishing her commission of Cruelty to Animals. Defense counsel cross-examined the majority of the State's witnesses and presented several witnesses on behalf of the defense and appeared to do so in an effective manner.

{¶71} The seventh assignment of error is without merit.

{¶72} In her eighth assignment of error, Thompson argues that the lower court abused its discretion because it did not follow this court's order on remand regarding a

18

lack of a final appealable order.

{¶73} In a September 17, 2018 Judgment Entry, this court remanded this matter to the trial court, ordering that it "hold its restitution hearing and issue a formal final judgment which includes all the elements of a final appealable order." The trial court held a restitution hearing but did not issue a judgment, in a single document, that contained all of the elements necessary for a final order, including the fact of conviction, sentence, and restitution. *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 17; *State ex rel. McKinney v. McKay,* 11th Dist. Trumbull No. 2011-T-0039, 2011-Ohio-3756, ¶ 14. As such, this court issued a second judgment remanding to the trial court on April 2, 2019, requiring compliance with the order to issue a single final judgment entry. Such a judgment was issued by the trial court on April 5, 2019. While we recognize that the trial court did initially fail to comply with this court's order, this does not constitute reversible error. A final entry was issued upon remand and this court has been able to properly exercise its jurisdiction to resolve Thompson's appeal.

{¶74} The eighth assignment of error is without merit.

{¶75} For the foregoing reasons, Thompson's conviction and sentence for Cruelty to Animals in the Trumbull County Court, Central District, are affirmed. Costs to be taxed against appellant.

MARY JANE TRAPP, J., concurs,

THOMAS R. WRIGHT, P.J., concurs in judgment only.

19